WAYMOND M. BROWN, Judge
Appellant's sole point on appeal is that the circuit court erred and abused its discretion in denying his timely motions for directed verdict due to insufficiency of the evidence. We affirm.
An amended information was filed on August 8, 2017, charging appellant with possession of firearm by certain persons, criminal use of a prohibited weapon, and habitual offender. The affidavit of probable cause for arrest described the events leading to the filing of the information as follows:
On July 24, 2017 officers took a report from a female regarding James Andrew Caple, aka "Andy", making threatening comments. She stated that [appellant] had threatened to kill her and she was afraid for her life. She stated that [appellant] believed that she was working with law enforcement and sent her pictures with him holding guns. She also received a video of him shooting one of the guns.
On July 25, 2017 officers were called out to a local tire shop where the employee had located a gun on their property. While the employee was speaking to another employee an unknown male walked up claiming the gun was his and he wanted it back. The two men would not allow the unknown male to take it, and when they started to call 911, the unknown male ran away. The unknown male was described as tall and skinny with tear drop tattoos around his eyes. It was discovered that [appellant], was [the] male in question, and the gun matched the ones from the pictures the female had showed officers July 24, 2017. [Appellant] is a current Parolee on active supervision and not allowed to possess firearms. The gun in question is a sawed off .22 caliber rifle. [Appellant] has been charged with nine (9) felonies over the last fifteen (15) years.
A bench trial was held in the matter on December 5, 2017. Michael Day, an investigator for the Mountain Home Police Department, *356 testified to receiving a report from the victim alleging that appellant "threatened to kill her" while he was at the Mountain Home Motel on July 22, 2017, because "he thought she was working with the police." Appellant had also sent pictures of himself to her cell phone holding a firearm which she showed Day. She also showed Day the same photos posted on Facebook with a "timestamp" of July 24, 2017. There were seven photos total: three from the victim and four from Facebook. Day admitted no independent knowledge of when or where the photographs were taken. In his opinion, the photos were "absolutely" pictures of appellant and "absolutely" pictures of a gun, specifically of appellant holding the gun that came into Day's possession on July 24, 2017. Day knew appellant was a felon at the time he obtained the photos because Day had "had a run-in or two with him in the past."
On the same date, Day also received a call from another police officer subsequent to that encounter asserting possession of a gun that "supposedly involved" appellant. Day took possession of the gun, which was a loaded Mossberg 702 Plinkster, a rifle. He went on to testify that the overall length of the gun was too short by about eight inches and the barrel was too short by about twelve inches. Accordingly, the gun was illegal for anyone to possess, whether a convicted felon or not.
Bobby Hicks, appellant's parole officer, testified that appellant "paroled out back in November, 2016" and was assigned to his caseload as a maximum-supervision case. He agreed that is was "fair to say that [appellant had] been a convicted felon for years"-"at least the last ten years"-and stated, after looking at the seven photos, that "the person depicted in those pictures appear[ed] to be [appellant]"; at least in six of the seven photos since he could not see the person's face in one picture. Appellant had been incarcerated since July 26, 2017; however, he could have had access to social media via a contraband cellular phone.
Mike Allen, owner of El Dorado Tire Service, testified to seeing a "lanyard clip or something sticking out from under [Allen's] portable building" and discovered upon use of a flashlight that it was a "little cut up .22 rifle under there." He noted that there was "always people stashing stuff back there." He told his workers that a gun had been "stashed" back there and they came to where he was, though they did not "mess with" the gun. At that time, appellant walked by and Allen "jokingly" asked if appellant had lost his gun, to which appellant replied "Yeah, I did, dude. I need to snag that." When appellant came toward Allen and his workers to retrieve the gun, one of his workers stopped him. Appellant then turned and walked away in the direction from which he had come; then he ran. Allen called the police. Allen was present when the officers unloaded the gun; it had a magazine and one shell in the chamber.
Chris Cass, one of Allen's employees, testified to being present when appellant walked by; he was the person who stopped appellant from retrieving the gun. He too was present when the officer unloaded the gun seeing a shell in the chamber and mud in the barrel.
Following Cass's testimony, appellee rested, and appellant moved for a directed verdict due to appellee's alleged failure to prove that appellant controlled or possessed the weapon on the asserted date. The motion was denied. Appellant then rested his case without putting on any additional evidence and renewed his directed-verdict motion, which was again denied.
The circuit court then found appellant guilty of possession of a firearm by certain persons and criminal use of prohibited *357 weapons. It sentenced appellant to eleven years' imprisonment in the Arkansas Department of Correction on each charge, to run concurrently, plus court costs and fees. A sentencing order reflecting the same was entered on December 6, 2017.[1] This timely appeal followed.
On appeal, we treat a motion for directed verdict as a challenge to the sufficiency of the evidence.[2] The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial.[3] Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture.[4] When a defendant challenges the sufficiency of the evidence that led to a conviction, the evidence is viewed in the light most favorable to the State.[5] Only evidence supporting the verdict will be considered.[6]
Arkansas Code Annotated section 5-73-103(a)(1) states, in relevant part, that subject to certain limitations that are not applicable in this case, no person shall possess or own a firearm who has been convicted of a felony.[7] A person commits the offense of criminal use of prohibited weapons if, except as authorized by law and where pertinent here, he or she uses, possesses, makes, repairs, sells, or otherwise deals in any sawed-off shotgun or rifle.[8] "Possess" means to exercise actual dominion, control, or management over a tangible object.[9] The State does not have to prove that the defendant physically held the contraband.[10] Constructive possession, which is the control or right to control the contraband, is sufficient.[11] Constructive possession may be established by circumstantial evidence, but when such evidence alone is relied on for conviction, it must indicate guilt and exclude every other reasonable hypothesis.[12] Furthermore, this court has stated the following regarding constructive possession:
Constructive possession may be implied when the contraband is in joint control of the defendant and another person. To prove constructive possession, the State must establish that the defendant exercised "care, control, and management over the contraband." There must be some evidence that the accused had knowledge of the presence of the contraband. The defendant's control over and knowledge of the contraband can be inferred from the circumstances, such as the proximity of the contraband to the *358 accused, the fact that it is in plain view, the ownership of the property where the contraband is found, and the accused's suspicious behavior. Location of the contraband in close proximity to the defendant has been held to be a sufficient linking factor to support a constructive possession conviction. The Arkansas Supreme Court has also considered the improbability that anyone other than the defendant placed the contraband in the location and the improbable nature of the defendant's explanations.[13 ]
We do not weigh the evidence presented at trial, as that is a matter for the fact-finder.[14] Witness credibility is an issue for the fact-finder, who is free to believe all or a portion of any witness's testimony and whose duty it is to resolve questions of conflicting testimony and inconsistent evidence.[15] Because a criminal defendant's intent can seldom be proved by direct evidence, it must usually be inferred from the circumstances surrounding the crime.[16] The fact-finder need not lay aside its common sense in evaluating the ordinary affairs of life and may consider and give weight to any false, improbable, and contradictory statements made by the defendant to explain suspicious circumstances when determining criminal knowledge and intent.[17]
Keeping in mind our standard of review, we do not consider the evidence that does not support the conviction.[18] Evidence that would tend to support a different conclusion is not to be considered.[19]
The evidence before the circuit court included pictures of appellant holding what appeared to be the same gun found by Allen; the same gun Allen testified to appellant attempting to retrieve before being stopped by Cass. The gun had a lanyard clip of some sort attached to it and there was witness testimony that the jacket appellant had on at the time he attempted to retrieve the gun had the mate to the clip attached to the gun. The pictured gun appeared to have gold paint on it just as did the gun appellant tried to retrieve, which was recovered by Day. Appellant was wearing red sweatpants at the time he tried to retrieve the gun and one of the photos showed a person who appeared to be appellant wearing red sweatpants while holding the gun.[20] Furthermore, it is clear that the gun is a cutdown rifle, which is illegal.
The evidence before the court, though circumstantial, shows that appellant took a picture holding the gun on the same day that he attempted to retrieve the apparently temporarily discarded and illegally cutdown rifle. Accordingly, we find no error with the circuit court's finding that *359 appellee's circumstantial evidence proved its case nor do we find any error with its finding that the circumstantial evidence was inconsistent with any other reasonable alternative. We affirm.
Affirmed.
Gruber, C.J., and Hixson, J., agree.

An amended sentencing order was entered on December 15, 2017, and a second amended sentencing order was entered on January 11, 2018, removing the habitual-offender charge.

Magness v. State , 2012 Ark. App. 609, at 7, 424 S.W.3d 395, 401 (citing Sims v. State , 2012 Ark. App. 472, 2012 WL 4009602 ).

Green v. State , 2018 Ark. App. 145, at 6, 544 S.W.3d 574, 578 (citing Crews v. State , 2017 Ark. App. 670, at 5, 536 S.W.3d 182, 186 ).

Magness , supra .

Green, supra .

Id.

Green , 2018 Ark. App. 145, at 9, 544 S.W.3d at 579-80 (citing Ark. Code Ann. § 5-73-103(a)(1) (Repl. 2016) ).

Ark. Code Ann. § 5-73-104(a)(3).

Green , 2018 Ark. App. 145, at 9, 544 S.W.3d at 580 (citing Ark. Code Ann. § 5-1-102(15) (Repl. 2013) ).

Robinson v. State , 2017 Ark. App. 689, at 4, 537 S.W.3d 765, 768 (citing Gill v. State , 2017 Ark. App. 22, 511 S.W.3d 865 ).

Id.

Id. at 5, 537 S.W.3d at 768 (citing White v. State , 2014 Ark. App. 587, 446 S.W.3d 193 ).

Block v. State , 2015 Ark. App. 83, at 5-6, 455 S.W.3d 336, 340 (internal citations omitted).

Scott v. State , 2015 Ark. App. 504, at 5, 471 S.W.3d 236, 239 (citing Freeman v. State , 331 Ark. 130, 133, 959 S.W.2d 400, 401 (1998) ).

Clark v. State , 2015 Ark. App. 679, at 3, 477 S.W.3d 544, 547 (citing Steele v. State , 2014 Ark. App. 257, at 6, 434 S.W.3d 424, 429 ).

Id. at 3-4, 477 S.W.3d at 547 (citing Feuget v. State , 2012 Ark. App. 182, 394 S.W.3d 310 ).

Worsham v. State , 2017 Ark. App. 702, at 7, 537 S.W.3d 789, 794 (citing Hoodenpyle v. State , 2013 Ark. App. 375, at 9, 428 S.W.3d at 552-53 (citing Hicks v. State , 2012 Ark. App. 667, 2012 WL 5949103 ) ).

Baltimore v. State , 2017 Ark. App. 622, at 6-7, 535 S.W.3d 286, 290 (citing Harris v. State , 2010 Ark. App. 123, at 4, 2010 WL 475351 ).

Id.

Said picture was from behind, but in profile.